**Joint Motion of Arizona Plaintiffs Greeves, Clark and Waeschle and Defendant Sepracor, Inc. to Approve Settlement Agreement and Dismiss Lawsuit with Prejudice**

**-And-**

**Joint Motion to Stay Pending Deadlines**

MDL Docket No. 09-2039-DGC

Member Case No. CV08-920-PHX-DGC only

# Index to Joint Motion

**Exhibit "1" –** The Parties' Executed Settlement Agreement

**Exhibit "2" –** Counsel for Plaintiffs' Declaration in Support of Settlement

Exhibit "1"

# SETTLEMENT AGREEMENT

WHEREAS, Leah Greeves ("Greeves"), Jacob Clark ("Clark") and Valerie Waeschle ("Waeschle"), collectively referred to herein as "Plaintiffs," filed a lawsuit against Sepracor Inc. ("Company") styled *Greeves et al v. Sepracor, Inc.,* in the United States District Court for the District of Arizona, case 2:08-CV-0920 ("the Litigation"), alleging that the Company had not paid Plaintiffs overtime wages required by the Fair Labor Standards Act, 29 USC §201 *et seq.* ("FLSA");

WHEREAS, Plaintiffs now have determined that, for various reasons, their claims in the Litigation are less valuable than they originally thought, such reasons including (a) information provided by Plaintiffs during discovery suggests that it will be difficult for them to overcome the Company's contention that they in fact were "exempt" employees within the meaning of the FLSA and not entitled to overtime wages; (b) the case law interpreting the FLSA in the context of unpaid overtime claims by pharmaceutical sales representatives is evolving throughout the United States in favor of the Company's contention that Plaintiffs were "exempt," thereby increasing the risks and uncertainties of continued litigation by Plaintiffs; (c) Plaintiffs have few records establishing with any reasonable certainty their "hours worked" (data critical to computing their claims for unpaid overtime wages); and (d) Company payroll data shows that Plaintiffs were on vacations and/or extended leaves of absence and that they had many partial work weeks during employment (that is, there were many weeks in which they could not have worked in excess of forty hours per week);

WHEREAS, Plaintiffs and the Company, through counsel, have carefully negotiated, in good faith and at arms-length, a settlement of Plaintiffs' claims in the Litigation in order to achieve a fair and reasonable compromise of the disputed issues of fact and law (which issues include Plaintiffs' entitlement to overtime wages, their "exempt" status under the FLSA and the hours (and overtime hours) actually worked by them) in order to fully and finally resolve Plaintiffs' FLSA claims against the Company;

WHEREAS, Plaintiffs and the Company agree that, by negotiating a settlement and paying certain sums to Plaintiffs, the Company is not conceding that Plaintiffs were entitled to overtime wages or were "non-exempt" within the meaning of the FLSA and, in fact, the Company continues to believe that Plaintiffs were "exempt" under various FLSA exemptions and to deny any liability to them; and

WHEREAS, Plaintiffs and the Company now wish to resolve their disputes and formalize their settlement in this "Settlement Agreement" ("Agreement"),

NOW, THEREFORE, Plaintiffs and the Company agree as follows:

Settlement Agreement
Page 1 of 7

LG    JC    VW    SU

I

1.    **The Company's obligations.**

A.    The Company agrees to pay and Plaintiffs agree to accept the following sums ("the Settlement Sums") in full and complete settlement of any and all FLSA claims that Plaintiffs might have against the Company: (i) $5,000 (less deductions and withholdings as for wages) in recognition of Greeves's claim for unpaid wages; (ii) $5,000 (without deductions or withholdings) in recognition of Greeves's claim for liquidated damages; (iii) $5,000 (less deductions and withholdings as for wages) in recognition of Clark's claim for unpaid wages; (iv) $5,000 (without deductions or withholdings) in recognition of Clark's claim for liquidated damages; (v) $2,500 (less deductions and withholdings as for wages) in recognition of Waeschle's claim for unpaid wages; (vi) $2,500 (without deductions or withholdings) in recognition of Waeschle's claim for liquidated damages; and (vii) $125,000 in recognition of Plaintiffs' claims for attorneys' fees and costs ($112,100.69 for fees; $12, 899.31 for costs). The Settlement Sums will not be treated as wages for any employee benefit purposes, including but not limited to contributions to pension and 401K plans. However, in negotiating the settlement, Plaintiffs and the Company did <u>not</u> agree or assume that the Company was conceding that Plaintiffs were entitled to overtime wages and, in fact, the Company denies any liability to them because they were "exempt" as "outside sales," "administrative" and/or "highly-compensated" employees within the meaning of the FLSA.

B.    The checks for the Settlement Sums will be delivered to counsel for Plaintiffs not later than fifteen (15) business days after Plaintiffs execute this Agreement and deliver it to the Company; the check for Plaintiffs' attorneys' fees and costs will be made payable to "Jackson White PC." Plaintiffs' counsel will hold each of the settlement checks in trust until the Court approves this Agreement and dismisses with prejudice Plaintiffs' claims in the Litigation. Plaintiffs' counsel will return the checks to Company counsel within two business days of any order refusing to approve this Agreement and/or refusing to dismiss with prejudice Plaintiffs' claims in the Litigation.

C.    The parties agree that the Company has made no representations to Plaintiffs regarding the tax consequences to them, if any, of the Company's payment of the Settlement Sums. The Settlement Sums attributable to Plaintiffs' claims for unpaid wages will be reported to them on Internal Revenue Service W-2 forms, with the balance reported to them on IRS 1099 forms. The parties agree that the Company is not obligated to and will not withhold any monies for federal, state, or local taxes from the Settlement Sums attributable to Plaintiffs' claims for liquidated damages and attorneys' fees and costs; Plaintiffs agree that they will be solely responsible for payment of any taxes or for making any contributions that may be due as to those sums and Plaintiffs agree to indemnify the Company against any claims by any person or entity that the Company wrongfully failed to withhold any



LG    JC    VW    SF

monies from those sums, including reimbursement of any attorneys' fees or costs incurred by the Company in defending any such claim.

D.    Plaintiffs will join with the Company in the preparation and filing in the Litigation of a "Joint Motion to Approve Settlement" seeking Court approval of the settlement and this Agreement and the dismissal with prejudice of Plaintiffs' claims.  Plaintiffs and the Company agree to use their best efforts and to cooperate to the extent reasonably necessary in order to implement this Agreement.

E.    Plaintiffs understand that the Settlement Sums shall constitute the sole financial obligation of the Company to Plaintiffs under this Agreement.  Other than as set forth above, Plaintiffs and the Company each will bear her, his or its own attorneys' fees and costs.

2.    **The Plaintiffs' releases.**

A.    In exchange for the Settlement Sums, each Plaintiff (on her/his own behalf and on behalf of her/his spouse, family, heirs, executors, administrators, personal representatives, and any other person who may be entitled to make a claim on her/his behalf or through her/him, and their successors and assigns) freely, irrevocably, unconditionally and forever releases and discharges the Company from any and all claims, actions and causes of action of any kind or nature arising under the FLSA and/or its interpreting regulations or their applications by the United States Department of Labor or the courts, including but not limited to claims under state and federal law for unpaid wages, overtime, meal or rest period penalties, interest, and punitive and/or exemplary damages which each Plaintiff once had or now has against the Company.

B.    Plaintiffs represent that they have not assigned or transferred to anyone any of the legal rights or FLSA claims that they are releasing with this Agreement.  Plaintiffs further agree that this Agreement binds any and all persons who might assert FLSA claims on any Plaintiff's behalf or through her or him.

C.    Plaintiffs agree not to sue, to file a "consent to participate" or to make a claim or demand in any action or proceeding against the Company claiming "unpaid overtime" under the FLSA.  Further, Plaintiffs agree to refuse to accept any money, benefit, or other relief from any "unpaid overtime" FLSA proceeding against the Company, whether brought by Plaintiffs or any other person, agency or entity.

3.    **Confidentiality.**

A.    Plaintiffs and the Company agree that confidentiality is a critical term of this Agreement but they also recognize that this Agreement must be filed with and approved by the Court in the Litigation.  However, it is the intent of the

parties, and the specific agreement of the Plaintiffs, that this settlement will not be disclosed other than as required in the Litigation, required by a subpoena or court order or required by law (such as with Plaintiffs' filings of income tax returns). Therefore, Plaintiffs and their counsel agree that, unless required in the Litigation or by a subpoena/court order or by law, they have not in the past (other than as was necessary to file and prosecute the Litigation) and they will not in the future at any time talk about, write about, disclose in any manner or publicize either (i) the fact that the parties have settled Plaintiffs' FLSA claims, (ii) the existence or terms of this Agreement or its negotiation, execution, or implementation and/or (iii) Plaintiffs' FLSA claims against the Company. However, it will not be considered a violation of this paragraph for Plaintiffs to respond to persons who inquire about the resolution of Plaintiffs' FLSA claims against the Company with words to the effect of "The matter has been resolved"; this does not permit Plaintiffs to volunteer that information to anyone or to speak about their claims other than in response to an inquiry.

      B.    In the event that Plaintiffs are compelled by subpoena or court order to provide information covered by the preceding subparagraph, they will promptly (but in any event not later than two business days of their receipt of such subpoena or court order) provide the Company's General Counsel with written notice of the subpoena/court order and give the Company an opportunity to formally object to the production of information in response to the subpoena/court order.

      C.    Within ten business days of the submission of this Agreement to the Court for its approval, Plaintiffs' Counsel will make arrangements for Defendant's counsel to pick up from Plaintiffs' Counsel all documents either (a) produced by Defendant in the course of informal and formal disclosure or discovery in the Litigation or (b) documents created by Sepracor but retained by any Plaintiff following his or her separation of employment from Sepracor (collectively, "Sepracor Documents"). Sepracor Documents include all copies of the documents, including any provided to Plaintiffs' testifying or consulting experts. Plaintiffs and Plaintiffs' Counsel are prohibited from using for any purpose, disclosing, or providing access to any Sepracor Documents, or any facts contained in any Sepracor Documents (in part or in whole) to any individual or entity.

      4.    **Plaintiffs' informed and voluntary signatures.**  Plaintiffs agree that they have carefully and fully investigated and now understand the nature and extent of the claims against the Company that they are releasing with this Agreement. Each Plaintiff agrees that (i) she/he has been actively and effectively represented by counsel in the negotiation and preparation of the terms and conditions of this Agreement; (ii) she/he has had a full and fair opportunity to review this Agreement and actually has discussed it with her/his attorney before signing it; (iii) she/he realizes that this Agreement contemplates the extinction of all

of her/his FLSA claims against the Company; and (iv) she/he signs this Agreement knowingly, voluntarily and without duress or coercion.

5.   **No admissions by the Company.**   This Agreement compromises claims contested in good faith and, thus, it is entered into for settlement purposes only.   The parties agree that the Agreement does not constitute a Company admission of any FLSA violation, of any FLSA liability to any Plaintiff or of any obligation to have paid Plaintiffs overtime wages during their employment.   This Agreement shall not be used as an admission of or evidence of the validity of Plaintiffs' claims or of Plaintiffs' or any other current or former Sepracor sales representative's entitlement to overtime wages or of the existence of any persons allegedly "similarly situated" to Plaintiffs.

6.   **Conditions precedent to settlement.**   Plaintiffs and the Company recognize and agree that the Court in the Litigation must approve this Agreement and the settlement of Plaintiffs' FLSA claims against the Company and that this Agreement shall not be effective or enforceable until such approval and dismissal occurs.   Therefore, Plaintiffs and the Company agree that the settlement contemplated by this Agreement is expressly contingent on such approvals and the dismissal with prejudice of Plaintiffs' FLSA claims in the Litigation and further agree that, if such approval is not given or the dismissal does not occur, this Agreement is void *ab initio* and cannot be used or referred to for any purpose whatsoever.

7.   **Miscellaneous.**

A.   This Agreement was negotiated, signed and delivered in the State of Arizona and thus shall be interpreted and enforced in accordance with the laws of that state without regard to its conflicts of laws principles.

B.   If any party initiates proceedings for breach of this Agreement, the prevailing party shall recover her/his/its attorneys' fees and costs, including such fees and costs on any enforcement or appeal proceedings.   The venue of any such enforcement proceedings will be Maricopa County, Arizona. The parties agree that the United States District Court for the District of Arizona will have continuing jurisdiction to construe, interpret and enforce the provisions of this Settlement Agreement, and to hear and adjudicate any dispute or litigation arising from this Settlement Agreement.   Other than the necessary filing of this Agreement in the Litigation (in order to obtain a dismissal with prejudice of Plaintiffs' claims), any party seeking to file this Agreement in a court will do so only under seal unless prohibited by the court.

C.    The Agreement may not be modified orally but only by a writing signed by all parties to the Agreement.

D.    The provisions of the Agreement are severable.   If one or more paragraph(s) of the Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

E.    The parties acknowledge that this Agreement was negotiated and prepared jointly and that no rule of construction will apply in favor of or against any party in resolving any uncertainties or ambiguities.

F.    This Agreement shall inure to the benefit of and shall be binding upon the Plaintiffs and the Company and their respective successors and assigns.   This Agreement is not intended to and does not create any third-party beneficiaries, express or implied.

G.    This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement.   All counterparts of any such document together will constitute one and the same instrument.

H.    As used in the Agreement, "Plaintiffs" shall mean Leah Greeves, Jacob Clark and Valerie Waeschle.   As used in the Agreement, "Company" shall mean Sepracor Inc. as well as its parents, subsidiaries and affiliated organizations and their successors and assigns as well as their partners, directors, officers, employees, agents, attorneys, representatives, shareholders, insurers, and their respective pension, profit-sharing, savings, health, trusts, and other employee benefit plans of any nature, and those plans' respective trustees, plan fiduciaries and administrators, and their respective heirs and personal representatives.

Date:  October 20, 2009

_____
**Leah Greeves, on her own behalf and on behalf of anyone who could claim for her or through her**

Date:  October __, 2009

_____
**Jacob Clark, on his own behalf and on behalf of anyone who could claim for him or through him**

Date:  October  __, 2009                 _____

**Valerie  Waeschle,  on  her  own  behalf
and  on  behalf  of  anyone  who  could
claim  for  her  or  through  her**

**Sepracor Inc.**

Date:  October  __, 2009          By:_____
                                      Its_____

# 8867902_v1

Settlement Agreement
Page 7 of 7
___   ___   ___   ___
LG    JC    VW    SP

# SETTLEMENT AGREEMENT

WHEREAS, Leah Greeves ("Greeves"), Jacob Clark ("Clark") and Valerie Waeschle ("Waeschle"), collectively referred to herein as "Plaintiffs," filed a lawsuit against Sepracor Inc. ("Company") styled *Greeves et al v. Sepracor, Inc.,* in the United States District Court for the District of Arizona, case 2:08-CV-0920 ("the Litigation"), alleging that the Company had not paid Plaintiffs overtime wages required by the Fair Labor Standards Act, 29 USC §201 *et seq.* ("FLSA");

WHEREAS, Plaintiffs now have determined that, for various reasons, their claims in the Litigation are less valuable than they originally thought, such reasons including (a) information provided by Plaintiffs during discovery suggests that it will be difficult for them to overcome the Company's contention that they in fact were "exempt" employees within the meaning of the FLSA and not entitled to overtime wages; (b) the case law interpreting the FLSA in the context of unpaid overtime claims by pharmaceutical sales representatives is evolving throughout the United States in favor of the Company's contention that Plaintiffs were "exempt," thereby increasing the risks and uncertainties of continued litigation by Plaintiffs; (c) Plaintiffs have few records establishing with any reasonable certainty their "hours worked" (data critical to computing their claims for unpaid overtime wages); and (d) Company payroll data shows that Plaintiffs were on vacations and/or extended leaves of absence and that they had many partial work weeks during employment (that is, there were many weeks in which they could not have worked in excess of forty hours per week);

WHEREAS, Plaintiffs and the Company, through counsel, have carefully negotiated, in good faith and at arms-length, a settlement of Plaintiffs' claims in the Litigation in order to achieve a fair and reasonable compromise of the disputed issues of fact and law (which issues include Plaintiffs' entitlement to overtime wages, their "exempt" status under the FLSA and the hours (and overtime hours) actually worked by them) in order to fully and finally resolve Plaintiffs' FLSA claims against the Company;

WHEREAS, Plaintiffs and the Company agree that, by negotiating a settlement and paying certain sums to Plaintiffs, the Company is not conceding that Plaintiffs were entitled to overtime wages or were "non-exempt" within the meaning of the FLSA and, in fact, the Company continues to believe that Plaintiffs were "exempt" under various FLSA exemptions and to deny any liability to them; and

WHEREAS, Plaintiffs and the Company now wish to resolve their disputes and formalize their settlement in this "Settlement Agreement" ("Agreement"),

NOW, THEREFORE, Plaintiffs and the Company agree as follows:

Settlement Agreement
Page 1 of 7

| LG | JC | VW | S |

I

1.     **The Company's obligations.**

A.     The Company agrees to pay and Plaintiffs agree to accept the following sums ("the Settlement Sums") in full and complete settlement of any and all FLSA claims that Plaintiffs might have against the Company: (i) $5,000 (less deductions and withholdings as for wages) in recognition of Greeves's claim for unpaid wages; (ii) $5,000 (without deductions or withholdings) in recognition of Greeves's claim for liquidated damages; (iii) $5,000 (less deductions and withholdings as for wages) in recognition of Clark's claim for unpaid wages; (iv) $5,000 (without deductions or withholdings) in recognition of Clark's claim for liquidated damages; (v) $2,500 (less deductions and withholdings as for wages) in recognition of Waeschle's claim for unpaid wages; (vi) $2,500 (without deductions or withholdings) in recognition of Waeschle's claim for liquidated damages; and (vii) $125,000 in recognition of Plaintiffs' claims for attorneys' fees and costs ($112,100.69 for fees; $12, 899.31 for costs).  The Settlement Sums will not be treated as wages for any employee benefit purposes, including but not limited to contributions to pension and 401K plans.  However, in negotiating the settlement, Plaintiffs and the Company did <u>not</u> agree or assume that the Company was conceding that Plaintiffs were entitled to overtime wages and, in fact, the Company denies any liability to them because they were "exempt" as "outside sales," "administrative" and/or "highly-compensated" employees within the meaning of the FLSA.

B.     The checks for the Settlement Sums will be delivered to counsel for Plaintiffs not later than fifteen (15) business days after Plaintiffs execute this Agreement and deliver it to the Company; the check for Plaintiffs' attorneys' fees and costs will be made payable to "Jackson White PC."  Plaintiffs' counsel will hold each of the settlement checks in trust until the Court approves this Agreement and dismisses with prejudice Plaintiffs' claims in the Litigation.  Plaintiffs' counsel will return the checks to Company counsel within two business days of any order refusing to approve this Agreement and/or refusing to dismiss with prejudice Plaintiffs' claims in the Litigation.

C.     The parties agree that the Company has made no representations to Plaintiffs regarding the tax consequences to them, if any, of the Company's payment of the Settlement Sums.  The Settlement Sums attributable to Plaintiffs' claims for unpaid wages will be reported to them on Internal Revenue Service W-2 forms, with the balance reported to them on IRS 1099 forms.  The parties agree that the Company is not obligated to and will not withhold any monies for federal, state, or local taxes from the Settlement Sums attributable to Plaintiffs' claims for liquidated damages and attorneys' fees and costs; Plaintiffs agree that they will be solely responsible for payment of any taxes or for making any contributions that may be due as to those sums and Plaintiffs agree to indemnify the Company against any claims by any person or entity that the Company wrongfully failed to withhold any

Settlement Agreement
Page 2 of 7

_____   _____   _____   _____
LG      JC      VW      SI

monies from those sums, including reimbursement of any attorneys' fees or costs incurred by the Company in defending any such claim.

D.     Plaintiffs will join with the Company in the preparation and filing in the Litigation of a "Joint Motion to Approve Settlement" seeking Court approval of the settlement and this Agreement and the dismissal with prejudice of Plaintiffs' claims.  Plaintiffs and the Company agree to use their best efforts and to cooperate to the extent reasonably necessary in order to implement this Agreement.

E.     Plaintiffs understand that the Settlement Sums shall constitute the sole financial obligation of the Company to Plaintiffs under this Agreement.  Other than as set forth above, Plaintiffs and the Company each will bear her, his or its own attorneys' fees and costs.

2.     **The Plaintiffs' releases.**

A.     In exchange for the Settlement Sums, each Plaintiff (on her/his own behalf and on behalf of her/his spouse, family, heirs, executors, administrators, personal representatives, and any other person who may be entitled to make a claim on her/his behalf or through her/him, and their successors and assigns) freely, irrevocably,  unconditionally and forever releases and discharges the Company from any and all claims, actions and causes of action of any kind or nature arising under the FLSA and/or its interpreting regulations or their applications by the United States Department of Labor or the courts, including but not limited to claims under state and federal law for unpaid wages, overtime, meal or rest period penalties, interest, and punitive and/or exemplary damages which each Plaintiff once had or now has against the Company.

B.     Plaintiffs represent that they have not assigned or transferred to anyone any of the legal rights or FLSA claims that they are releasing with this Agreement.  Plaintiffs further agree that this Agreement binds any and all persons who might assert FLSA claims on any Plaintiff's behalf or through her or him.

C.     Plaintiffs agree not to sue, to file a "consent to participate" or to make a claim or demand in any action or proceeding against the Company claiming "unpaid overtime" under the FLSA.  Further, Plaintiffs agree to refuse to accept any money, benefit, or other relief from any "unpaid overtime" FLSA proceeding against the Company, whether brought by Plaintiffs or any other person, agency or entity.

3.     **Confidentiality.**

A.     Plaintiffs and the Company agree that confidentiality is a critical term of this Agreement but they also recognize that this Agreement must be filed with and approved by the Court in the Litigation.  However, it is the intent of the

Settlement Agreement
Page 3 of 7



—————  —————  —————  —————
LG        JC        VW        SH

parties, and the specific agreement of the Plaintiffs, that this settlement will not be disclosed other than as required in the Litigation, required by a subpoena or court order or required by law (such as with Plaintiffs' filings of income tax returns). Therefore, Plaintiffs and their counsel agree that, unless required in the Litigation or by a subpoena/court order or by law, they have not in the past (other than as was necessary to file and prosecute the Litigation) and they will not in the future at any time talk about, write about, disclose in any manner or publicize either (i) the fact that the parties have settled Plaintiffs' FLSA claims, (ii) the existence or terms of this Agreement or its negotiation, execution, or implementation and/or (iii) Plaintiffs' FLSA claims against the Company. However, it will not be considered a violation of this paragraph for Plaintiffs to respond to persons who inquire about the resolution of Plaintiffs' FLSA claims against the Company with words to the effect of "The matter has been resolved"; this does not permit Plaintiffs to volunteer that information to anyone or to speak about their claims other than in response to an inquiry.

B.    In the event that Plaintiffs are compelled by subpoena or court order to provide information covered by the preceding subparagraph, they will promptly (but in any event not later than two business days of their receipt of such subpoena or court order) provide the Company's General Counsel with written notice of the subpoena/court order and give the Company an opportunity to formally object to the production of information in response to the subpoena/court order.

C.    Within ten business days of the submission of this Agreement to the Court for its approval, Plaintiffs' Counsel will make arrangements for Defendant's counsel to pick up from Plaintiffs' Counsel all documents either (a) produced by Defendant in the course of informal and formal disclosure or discovery in the Litigation or (b) documents created by Sepracor but retained by any Plaintiff following his or her separation of employment from Sepracor (collectively, "Sepracor Documents"). Sepracor Documents include all copies of the documents, including any provided to Plaintiffs' testifying or consulting experts. Plaintiffs and Plaintiffs' Counsel are prohibited from using for any purpose, disclosing, or providing access to any Sepracor Documents, or any facts contained in any Sepracor Documents (in part or in whole) to any individual or entity.

4.    **Plaintiffs' informed and voluntary signatures.**    Plaintiffs agree that they have carefully and fully investigated and now understand the nature and extent of the claims against the Company that they are releasing with this Agreement. Each Plaintiff agrees that (i) she/he has been actively and effectively represented by counsel in the negotiation and preparation of the terms and conditions of this Agreement; (ii) she/he has had a full and fair opportunity to review this Agreement and actually has discussed it with her/his attorney before signing it; (iii) she/he realizes that this Agreement contemplates the extinction of all

Settlement Agreement
Page 4 of 7



___    ___    ___    ___
LG     JC     VW     SI

of her/his FLSA claims against the Company; and (iv) she/he signs this Agreement knowingly, voluntarily and without duress or coercion.

5. **No admissions by the Company.** This Agreement compromises claims contested in good faith and, thus, it is entered into for settlement purposes only. The parties agree that the Agreement does not constitute a Company admission of any FLSA violation, of any FLSA liability to any Plaintiff or of any obligation to have paid Plaintiffs overtime wages during their employment. This Agreement shall not be used as an admission of or evidence of the validity of Plaintiffs' claims or of Plaintiffs' or any other current or former Sepracor sales representative's entitlement to overtime wages or of the existence of any persons allegedly "similarly situated" to Plaintiffs.

6. **Conditions precedent to settlement.** Plaintiffs and the Company recognize and agree that the Court in the Litigation must approve this Agreement and the settlement of Plaintiffs' FLSA claims against the Company and that this Agreement shall not be effective or enforceable until such approval and dismissal occurs. Therefore, Plaintiffs and the Company agree that the settlement contemplated by this Agreement is expressly contingent on such approvals and the dismissal with prejudice of Plaintiffs' FLSA claims in the Litigation and further agree that, if such approval is not given or the dismissal does not occur, this Agreement is void *ab initio* and cannot be used or referred to for any purpose whatsoever.

7. **Miscellaneous.**

A. This Agreement was negotiated, signed and delivered in the State of Arizona and thus shall be interpreted and enforced in accordance with the laws of that state without regard to its conflicts of laws principles.

B. If any party initiates proceedings for breach of this Agreement, the prevailing party shall recover her/his/its attorneys' fees and costs, including such fees and costs on any enforcement or appeal proceedings. The venue of any such enforcement proceedings will be Maricopa County, Arizona. The parties agree that the United States District Court for the District of Arizona will have continuing jurisdiction to construe, interpret and enforce the provisions of this Settlement Agreement, and to hear and adjudicate any dispute or litigation arising from this Settlement Agreement. Other than the necessary filing of this Agreement in the Litigation (in order to obtain a dismissal with prejudice of Plaintiffs' claims), any party seeking to file this Agreement in a court will do so only under seal unless prohibited by the court.

Settlement Agreement
Page 5 of 7



‾‾‾‾  ‾‾‾‾  ‾‾‾‾  ‾‾‾‾
LG    JC    VW    SJ

C.     The Agreement may not be modified orally but only by a writing signed by all parties to the Agreement.

D.     The provisions of the Agreement are severable.   If one or more paragraph(s) of the Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

E.     The parties acknowledge that this Agreement was negotiated and prepared jointly and that no rule of construction will apply in favor of or against any party in resolving any uncertainties or ambiguities.

F.     This Agreement shall inure to the benefit of and shall be binding upon the Plaintiffs and the Company and their respective successors and assigns.   This Agreement is not intended to and does not create any third-party beneficiaries, express or implied.

G.     This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement.   All counterparts of any such document together will constitute one and the same instrument.

H.     As used in the Agreement, "Plaintiffs" shall mean Leah Greeves, Jacob Clark and Valerie Waeschle.   As used in the Agreement, "Company" shall mean Sepracor Inc. as well as its parents, subsidiaries and affiliated organizations and their successors and assigns as well as their partners, directors, officers, employees, agents, attorneys, representatives, shareholders, insurers, and their respective pension, profit-sharing, savings, health, trusts, and other employee benefit plans of any nature, and those plans' respective trustees, plan fiduciaries and administrators, and their respective heirs and personal representatives.

Date: October ___, 2009

_____
**Leah Greeves, on her own behalf and on behalf of anyone who could claim for her or through her**

Date: October ___, 2009

_____
**Jacob Clark, on his own behalf and on behalf of anyone who could claim for him or through him**

Settlement Agreement
Page 6 of 7

____     ____     ____     ____
LG       JC       VW       SI

Date:  October 20, 2009

**Valerie Waeschle, on her own behalf and on behalf of anyone who could claim for her or through her**

**Sepracor Inc.**

Date:  October __, 2009

By: _____

Its _____

# 8867902_v1

Settlement Agreement
Page 7 of 7

LG   JC   VW   SI

# SETTLEMENT AGREEMENT

WHEREAS, Leah Greeves ("Greeves"), Jacob Clark ("Clark") and Valerie Waeschle ("Waeschle"), collectively referred to herein as "Plaintiffs," filed a lawsuit against Sepracor Inc. ("Company") styled *Greeves et al v. Sepracor, Inc.,* in the United States District Court for the District of Arizona, case 2:08-CV-0920 ("the Litigation"), alleging that the Company had not paid Plaintiffs overtime wages required by the Fair Labor Standards Act, 29 USC §201 *et seq.* ("FLSA");

WHEREAS, Plaintiffs now have determined that, for various reasons, their claims in the Litigation are less valuable than they originally thought, such reasons including (a) information provided by Plaintiffs during discovery suggests that it will be difficult for them to overcome the Company's contention that they in fact were "exempt" employees within the meaning of the FLSA and not entitled to overtime wages; (b) the case law interpreting the FLSA in the context of unpaid overtime claims by pharmaceutical sales representatives is evolving throughout the United States in favor of the Company's contention that Plaintiffs were "exempt," thereby increasing the risks and uncertainties of continued litigation by Plaintiffs; (c) Plaintiffs have few records establishing with any reasonable certainty their "hours worked" (data critical to computing their claims for unpaid overtime wages); and (d) Company payroll data shows that Plaintiffs were on vacations and/or extended leaves of absence and that they had many partial work weeks during employment (that is, there were many weeks in which they could not have worked in excess of forty hours per week);

WHEREAS, Plaintiffs and the Company, through counsel, have carefully negotiated, in good faith and at arms-length, a settlement of Plaintiffs' claims in the Litigation in order to achieve a fair and reasonable compromise of the disputed issues of fact and law (which issues include Plaintiffs' entitlement to overtime wages, their "exempt" status under the FLSA and the hours (and overtime hours) actually worked by them) in order to fully and finally resolve Plaintiffs' FLSA claims against the Company;

WHEREAS, Plaintiffs and the Company agree that, by negotiating a settlement and paying certain sums to Plaintiffs, the Company is not conceding that Plaintiffs were entitled to overtime wages or were "non-exempt" within the meaning of the FLSA and, in fact, the Company continues to believe that Plaintiffs were "exempt" under various FLSA exemptions and to deny any liability to them; and

WHEREAS, Plaintiffs and the Company now wish to resolve their disputes and formalize their settlement in this "Settlement Agreement" ("Agreement"),

NOW, THEREFORE, Plaintiffs and the Company agree as follows:

Settlement Agreement
Page 1 of 7

LG    JC    VW    SI                              1

1. **The Company's obligations.**

A.  The Company agrees to pay and Plaintiffs agree to accept the following sums ("the Settlement Sums") in full and complete settlement of any and all FLSA claims that Plaintiffs might have against the Company: (i) $5,000 (less deductions and withholdings as for wages) in recognition of Greeves's claim for unpaid wages; (ii) $5,000 (without deductions or withholdings) in recognition of Greeves's claim for liquidated damages; (iii) $5,000 (less deductions and withholdings as for wages) in recognition of Clark's claim for unpaid wages; (iv) $5,000 (without deductions or withholdings) in recognition of Clark's claim for liquidated damages; (v) $2,500 (less deductions and withholdings as for wages) in recognition of Waeschle's claim for unpaid wages; (vi) $2,500 (without deductions or withholdings) in recognition of Waeschle's claim for liquidated damages; and (vii) $125,000 in recognition of Plaintiffs' claims for attorneys' fees and costs ($112,100.69 for fees; $12, 899.31 for costs).  The Settlement Sums will not be treated as wages for any employee benefit purposes, including but not limited to contributions to pension and 401K plans.  However, in negotiating the settlement, Plaintiffs and the Company did not agree or assume that the Company was conceding that Plaintiffs were entitled to overtime wages and, in fact, the Company denies any liability to them because they were "exempt" as "outside sales," "administrative" and/or "highly-compensated" employees within the meaning of the FLSA.

B.  The checks for the Settlement Sums will be delivered to counsel for Plaintiffs not later than fifteen (15) business days after Plaintiffs execute this Agreement and deliver it to the Company; the check for Plaintiffs' attorneys' fees and costs will be made payable to "Jackson White PC."  Plaintiffs' counsel will hold each of the settlement checks in trust until the Court approves this Agreement and dismisses with prejudice Plaintiffs' claims in the Litigation.  Plaintiffs' counsel will return the checks to Company counsel within two business days of any order refusing to approve this Agreement and/or refusing to dismiss with prejudice Plaintiffs' claims in the Litigation.

C.  The parties agree that the Company has made no representations to Plaintiffs regarding the tax consequences to them, if any, of the Company's payment of the Settlement Sums.  The Settlement Sums attributable to Plaintiffs' claims for unpaid wages will be reported to them on Internal Revenue Service W-2 forms, with the balance reported to them on IRS 1099 forms.  The parties agree that the Company is not obligated to and will not withhold any monies for federal, state, or local taxes from the Settlement Sums attributable to Plaintiffs' claims for liquidated damages and attorneys' fees and costs; Plaintiffs agree that they will be solely responsible for payment of any taxes or for making any contributions that may be due as to those sums and Plaintiffs agree to indemnify the Company against any claims by any person or entity that the Company wrongfully failed to withhold any

monies from those sums, including reimbursement of any attorneys' fees or costs incurred by the Company in defending any such claim.

D.     Plaintiffs will join with the Company in the preparation and filing in the Litigation of a "Joint Motion to Approve Settlement" seeking Court approval of the settlement and this Agreement and the dismissal with prejudice of Plaintiffs' claims.  Plaintiffs and the Company agree to use their best efforts and to cooperate to the extent reasonably necessary in order to implement this Agreement.

E.     Plaintiffs understand that the Settlement Sums shall constitute the sole financial obligation of the Company to Plaintiffs under this Agreement.  Other than as set forth above, Plaintiffs and the Company each will bear her, his or its own attorneys' fees and costs.

2.     **The Plaintiffs' releases.**

A.     In exchange for the Settlement Sums, each Plaintiff (on her/his own behalf and on behalf of her/his spouse, family, heirs, executors, administrators, personal representatives, and any other person who may be entitled to make a claim on her/his behalf or through her/him, and their successors and assigns) freely, irrevocably, unconditionally and forever releases and discharges the Company from any and all claims, actions and causes of action of any kind or nature arising under the FLSA and/or its interpreting regulations or their applications by the United States Department of Labor or the courts, including but not limited to claims under state and federal law for unpaid wages, overtime, meal or rest period penalties, interest, and punitive and/or exemplary damages which each Plaintiff once had or now has against the Company.

B.     Plaintiffs represent that they have not assigned or transferred to anyone any of the legal rights or FLSA claims that they are releasing with this Agreement.  Plaintiffs further agree that this Agreement binds any and all persons who might assert FLSA claims on any Plaintiff's behalf or through her or him.

C.     Plaintiffs agree not to sue, to file a "consent to participate" or to make a claim or demand in any action or proceeding against the Company claiming "unpaid overtime" under the FLSA.  Further, Plaintiffs agree to refuse to accept any money, benefit, or other relief from any "unpaid overtime" FLSA proceeding against the Company, whether brought by Plaintiffs or any other person, agency or entity.

3.     **Confidentiality.**

A.     Plaintiffs and the Company agree that confidentiality is a critical term of this Agreement but they also recognize that this Agreement must be filed with and approved by the Court in the Litigation.  However, it is the intent of the

Settlement Agreement
Page 3 of 7

<u>LG</u>     <u>JC</u>     <u>VW</u>     <u>SI</u>

parties, and the specific agreement of the Plaintiffs, that this settlement will not be disclosed other than as required in the Litigation, required by a subpoena or court order or required by law (such as with Plaintiffs' filings of income tax returns). Therefore, Plaintiffs and their counsel agree that, unless required in the Litigation or by a subpoena/court order or by law, they have not in the past (other than as was necessary to file and prosecute the Litigation) and they will not in the future at any time talk about, write about, disclose in any manner or publicize either (i) the fact that the parties have settled Plaintiffs' FLSA claims, (ii) the existence or terms of this Agreement or its negotiation, execution, or implementation and/or (iii) Plaintiffs' FLSA claims against the Company. However, it will not be considered a violation of this paragraph for Plaintiffs to respond to persons who inquire about the resolution of Plaintiffs' FLSA claims against the Company with words to the effect of "The matter has been resolved"; this does not permit Plaintiffs to volunteer that information to anyone or to speak about their claims other than in response to an inquiry.

B.    In the event that Plaintiffs are compelled by subpoena or court order to provide information covered by the preceding subparagraph, they will promptly (but in any event not later than two business days of their receipt of such subpoena or court order) provide the Company's General Counsel with written notice of the subpoena/court order and give the Company an opportunity to formally object to the production of information in response to the subpoena/court order.

C.    Within ten business days of the submission of this Agreement to the Court for its approval, Plaintiffs' Counsel will make arrangements for Defendant's counsel to pick up from Plaintiffs' Counsel all documents either (a) produced by Defendant in the course of informal and formal disclosure or discovery in the Litigation or (b) documents created by Sepracor but retained by any Plaintiff following his or her separation of employment from Sepracor (collectively, "Sepracor Documents"). Sepracor Documents include all copies of the documents, including any provided to Plaintiffs' testifying or consulting experts. Plaintiffs and Plaintiffs' Counsel are prohibited from using for any purpose, disclosing, or providing access to any Sepracor Documents, or any facts contained in any Sepracor Documents (in part or in whole) to any individual or entity.

4.    **Plaintiffs' informed and voluntary signatures.**    Plaintiffs agree that they have carefully and fully investigated and now understand the nature and extent of the claims against the Company that they are releasing with this Agreement. Each Plaintiff agrees that (i) she/he has been actively and effectively represented by counsel in the negotiation and preparation of the terms and conditions of this Agreement; (ii) she/he has had a full and fair opportunity to review this Agreement and actually has discussed it with her/his attorney before signing it; (iii) she/he realizes that this Agreement contemplates the extinction of all

Settlement Agreement
Page 4 of 7

___    ___    ___    ___
LG      JC      VW      SI

of her/his FLSA claims against the Company; and (iv) she/he signs this Agreement knowingly, voluntarily and without duress or coercion.

5. **No admissions by the Company.** This Agreement compromises claims contested in good faith and, thus, it is entered into for settlement purposes only. The parties agree that the Agreement does not constitute a Company admission of any FLSA violation, of any FLSA liability to any Plaintiff or of any obligation to have paid Plaintiffs overtime wages during their employment. This Agreement shall not be used as an admission of or evidence of the validity of Plaintiffs' claims or of Plaintiffs' or any other current or former Sepracor sales representative's entitlement to overtime wages or of the existence of any persons allegedly "similarly situated" to Plaintiffs.

6. **Conditions precedent to settlement.** Plaintiffs and the Company recognize and agree that the Court in the Litigation must approve this Agreement and the settlement of Plaintiffs' FLSA claims against the Company and that this Agreement shall not be effective or enforceable until such approval and dismissal occurs. Therefore, Plaintiffs and the Company agree that the settlement contemplated by this Agreement is expressly contingent on such approvals and the dismissal with prejudice of Plaintiffs' FLSA claims in the Litigation and further agree that, if such approval is not given or the dismissal does not occur, this Agreement is void *ab initio* and cannot be used or referred to for any purpose whatsoever.

7. **Miscellaneous.**

A. This Agreement was negotiated, signed and delivered in the State of Arizona and thus shall be interpreted and enforced in accordance with the laws of that state without regard to its conflicts of laws principles.

B. If any party initiates proceedings for breach of this Agreement, the prevailing party shall recover her/his/its attorneys' fees and costs, including such fees and costs on any enforcement or appeal proceedings. The venue of any such enforcement proceedings will be Maricopa County, Arizona. The parties agree that the United States District Court for the District of Arizona will have continuing jurisdiction to construe, interpret and enforce the provisions of this Settlement Agreement, and to hear and adjudicate any dispute or litigation arising from this Settlement Agreement. Other than the necessary filing of this Agreement in the Litigation (in order to obtain a dismissal with prejudice of Plaintiffs' claims), any party seeking to file this Agreement in a court will do so only under seal unless prohibited by the court.

Settlement Agreement
Page 5 of 7

_____   _____   _____   _____
LG        JC        VW        SH

C.     The Agreement may not be modified orally but only by a writing signed by all parties to the Agreement.

D.     The provisions of the Agreement are severable.  If one or more paragraph(s) of the Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

E.     The parties acknowledge that this Agreement was negotiated and prepared jointly and that no rule of construction will apply in favor of or against any party in resolving any uncertainties or ambiguities.

F.     This Agreement shall inure to the benefit of and shall be binding upon the Plaintiffs and the Company and their respective successors and assigns.  This Agreement is not intended to and does not create any third-party beneficiaries, express or implied.

G.     This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement.  All counterparts of any such document together will constitute one and the same instrument.

H.     As used in the Agreement, "Plaintiffs" shall mean Leah Greeves, Jacob Clark and Valerie Waeschle.  As used in the Agreement, "Company" shall mean Sepracor Inc. as well as its parents, subsidiaries and affiliated organizations and their successors and assigns as well as their partners, directors, officers, employees, agents, attorneys, representatives, shareholders, insurers, and their respective pension, profit-sharing, savings, health, trusts, and other employee benefit plans of any nature, and those plans' respective trustees, plan fiduciaries and administrators, and their respective heirs and personal representatives.

Date: October ___, 2009

_____
**Leah Greeves, on her own behalf and on behalf of anyone who could claim for her or through her**

Date: October 23, 2009

_____
**Jacob Clark, on his own behalf and on behalf of anyone who could claim for him or through him**

Settlement Agreement
Page 6 of 7

___    ___    ___    ___
LG      JC      VW      SF

Date:  October  __, 2009                      _____

Valerie  Waeschle,  on  her  own  behalf
and  on  behalf  of  anyone  who  could
claim for her or through her

Sepracor Inc.

Date:  October  __, 2009          By: _Richard J Ranieri_____

Its _Exec VP Human Resources____

# 8867902_v1

Settlement Agreement
Page 7 of 7
‾‾‾    ‾‾‾    ‾‾‾    ‾‾‾
LG    JC    VW    SI

Exhibit "2"

# JACKSONWHITE
## ATTORNEYS AT LAW
### *A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
(480) 464-1111
By:    Michael R. Pruitt, No. 011792
mpruitt@jacksonwhitelaw.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: Sepracor, Inc. Fair labor Standards Act (FLSA) Litigation | MDL  Docket No. 09-2039-DGC |
| | Original District of Arizona Case No. CV08-920-PHX-DGC |
| | **COUNSEL FOR PLAINTIFFS' DECLARATION IN SUPPORT OF SETTLEMENT** |

Michael R. Pruitt, being duly sworn, upon my oath, states as follows:

1.     I make this Declaration of my own personal knowledge.

2.     The purpose of this Declaration is to advise the Court as to the facts and circumstances which warrant the conclusion that the proposed settlement is fair and a reasonable resolution of this case. *Lynn's Food Stores v. United States,* 679 F.2d 1350, 1352-3 (11th Cir. 1982)(Court scrutinizes the settlement for fairness); *Hand v. Dionex Corp.,* 2007 U.S. Dist. Lexis 87026 (D. Ariz. 2007)(Approving a fair and reasonable resolution of the issues).

3.     I am a 1984 graduate of Brigham Young University and a 1987 graduate of the J. Rueben Clark College of Law at Brigham Young University in Provo, Utah.

4.      I was admitted to practice in the State of Arizona in January 1988, in the United States District Court for the District of Arizona in January 1989, and in the United States Court of Appeals for the Ninth Circuit in August 1990.

5.      Beginning in 1989, I was employed as an associate attorney at Jackson White.  I became a shareholder at Jackson White in 1995.  Since 1988, I have been a member in good standing with the State Bar of Arizona.

6.      Beginning in 1992, I started developing an employment law practice centered primarily on employment litigation.  From 1995 to the present, nearly all of my law practice has involved employment litigation.  Approximately 70-75% of my practice involves representing plaintiffs and employees in employment litigation matters. Approximately 25-30% of my practice involves representing management and employers in defense of employment-related litigation, administrative proceedings, or litigation avoidance.

7.      I have represented hundreds of individuals and businesses in various employment matters and disputes.

8.      I am an active member of the Labor and Employment Law Section of the State Bar of Arizona and have spoken and lectured on various occasions at professional meetings and conferences concerning labor and employment matters and related legal issues.  I have enjoyed excellent peer recognition.  For many years, Martindale and Hubbell has given me an AV rating.

9.     I am the head of the employment law section at Jackson White.   I supervise the work of associate attorneys and paralegals who are members of the employment law section of Jackson White.

10.     I have served as lead counsel on numerous cases involving state and federal wage claims, including claims for failure to pay overtime wages brought under the Fair Labor Standards Acts ("FLSA"), representing both Plaintiffs and Defendants.

11.     I have served as lead counsel in several actions, including this one, which were filed as collective actions on behalf of those similarly situated as provided under the FLSA, representing both Plaintiffs and Defendants.

12.     On or about May 8, 2008, I accepted the representation of Leah Greeves to assert a claim against her former employer, Sepracor Inc. ("Sepracor"), involving the alleged failure to pay overtime wages under the FLSA. Ms. Greeves was subsequently joined by two other former Sepracor employees, Jacob "Jake" Clark and Valerie Waeschle. This matter was originally filed in the United States District Court for the District of Arizona (*Greeves, et. al. v. Sepracor,* Case No.: CV08-920-PHX-DGC) (the "Arizona case") as a collective action by these three named Plaintiffs (collectively the "Plaintiffs" or "Arizona Plaintiffs") on behalf of themselves and those similarly situated as provided under the FLSA.

13.     This case has involved several substantive motions and briefs, including Plaintiffs' Motion for Conditional Collective Action Certification and for *Hoffman-LaRoche* Notice and associated Response thereto along with the Response of Plaintiffs Leah Greeves, Jacob "Jake" Clark and Valerie Waeschle Opposing Motion of Sepracor,

Inc. to Transfer Action to the Middle District of Florida for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. §1407.

14.     During the course of this action, Plaintiffs have taken a Rule 30(b)(6) deposition while Defendant has taken the depositions of each of the three Plaintiffs.

15.     After a second case was filed in the Middle District of Florida involving two former Sepracor employees who also alleged violations of the FLSA, (*Sharp et al. v. Sepracor Inc.,* case no. 6:08-cv-1178) (the "Florida case"), a motion was filed by Sepracor to consolidate the Florida and Arizona cases for coordinated or consolidated pretrial proceedings to which Plaintiffs filed a response. Oral argument on this issue was held in Lexington, Kentucky before the Judicial Panel on Multidistrict Litigation. The Judicial Panel subsequently ruled that the Florida case be transferred to the District of Arizona for pretrial processing in conjunction with the Arizona case under the above caption and MDL docket number.

16.     I was lead counsel for Plaintiffs throughout this matter. As lead counsel, I was responsible for supervising the day-to-day activities and management of the case. This included supervising the work and research efforts of an associate attorney and a paralegal.  I was also involved in negotiations, discussions and communications with opposing counsel, meetings with my legal staff, directing discovery efforts and responses, communications and discussions with clients, and the preparation of various letters, pleadings and other case related documents. I was extensively involved in preparation for and conducting the Rule 30(b)(6) deposition along with defending two depositions and attended two scheduling conferences with the Court. I prepared and

edited written discovery and responses.  I also traveled to Lexington, Kentucky to attend oral arguments before the Judicial Panel on Multidistrict Litigation regarding the motion to consolidate the Florida and Arizona cases.

17.     Christine F. Crockett is an associate attorney with Jackson White who has worked in the firm's employment law section since 2006.  Ms. Crockett graduated from the J. Rueben Clark College of Law at Brigham Young University in April 2006 and has been authorized to practice law in Arizona since October 26, 2006.  During the course of this case, among other things, Ms. Crockett drafted letters, assisted in preparation for depositions, defended one deposition, attended meetings, authored legal memoranda, analyzed client documents, prepared and responded to written discovery, analyzed and reviewed documents produced by Defendant Sepracor and performed extensive legal research on various issues involved in this case.

18.     Some of the issues Ms. Crockett researched included the administrative, outside sales and highly compensated overtime wage exemptions, the evolving case law related to other collective actions involving overtime wage claims by pharmaceutical sales representatives in other district courts and multidistrict litigation case law and procedures.

19.     Gregory Fairbanks has a four year undergraduate degree and a paralegal certificate.  He has worked in the employment law section of Jackson White since October 4, 2004.  Among other things, Mr. Fairbanks drafted letters, pleadings and other case related documents, including discovery requests and responses and disclosure statements, attended meetings, assisted in preparation for depositions, authored legal

and other memoranda, performed legal research on various issues involved in this case, communicated with clients and opposing counsel, collected and analyzed client documents, analyzed and reviewed documents produced by Defendant Sepracor, reviewed status and developments in the Florida case prior to its consolidation with the Arizona case, reviewed multidistrict litigation process and procedures and created spreadsheets documenting and summarizing various aspects of this case including those related to calculation of Plaintiffs' damages and settlement amounts.

20.     An overview of the activities involved in the prosecution of this case, including important factual and legal issues requiring extensive analysis, review and preparation include the following:

- Before filing the lawsuit, Plaintiffs' counsel and staff conducted extensive interviews and consultations with the three Plaintiffs in order to gather background and factual information essential to the case along with identifying, analyzing and reviewing available and supporting documentation;

- Before filing the lawsuit, Plaintiff's counsel and staff conducted extensive research whether Plaintiffs were entitled to overtime wages under the FLSA or whether the work they performed qualified for the FLSA administrative and/or outside sales exemptions.  These were central issues to the case that required frequent research and monitoring as this topic is highly evolving in the legal community nationally.

- Extensive continuing research was performed on the exemption issues as they were also related to Plaintiffs' contention that the case should proceed as a collective action and was certain to be argued in great detail in anticipated dispositive motions;

- Sepracor also asserted early in the proceedings that two of Plaintiffs, Clark and Waeschle, qualified for the highly compensated exemption during portions of their employment. As a result, Plaintiff conducted additional research and document review related to this particular exemption;

• Plaintiffs also conducted extensive research and work on the issue of collective actions under the FLSA, *Hoffman-LaRoche* notice and the meaning of "similarly situated." These issues were subsequently argued and addressed in Plaintiffs' Motion for Conditional Collective Action Certification and for *Hoffman-LaRoche* Notice[1] and response thereto;

• If the Court granted Plaintiffs' request for conditional certification, extensive research, analysis and planning was performed in anticipation of Sepracor filing a motion to rescind the conditional certification of the collective action, presumably after the close of discovery;

• Given that Plaintiffs worked out of a home office and traveled to various doctors' offices during the course of their duties, the issue of whether or not travel from a Plaintiff's home to the first call of the day and returning to the home based office from the last call of the day was compensable time under the FLSA was researched and analyzed. It was expected that Sepracor would assert that such travel was non-compensable based on the Portal to Portal Act. Assuming liability on the part of Sepracor, the resolution of this issue would dramatically affect the amount of compensable time and damages for each Plaintiff in this case;

• The issue of eligibility for liquidated damages was researched and considered;

• The issue of whether Sepracor willfully violated the FLSA, thereby allowing the extension by one year of the statute of limitations, was researched and considered;

• Proving the number of hours Plaintiffs worked in excess of forty hours was carefully researched and analyzed;

• Additional research and analysis of caselaw and procedures under the multidistrict litigation was conducted; and

• Efforts also included preparing and responding to written discovery requests, preparing of disclosure statements, analysis of information disclosed by Sepracor through voluntary disclosures and discovery responses, preparation of

---

[1] Subsequent to the consolidating of the Florida and Arizona cases for pretrial processing, Plaintiffs' motion was denied without prejudice by the Court.

the parties for their depositions and defense of the depositions, and preparation for and taking a Rule 30(b)(6) deposition.

21.     Counsel for the parties also devoted a meaningful amount of time in negotiations that produced a settlement agreement.

22.     The negotiated settlement represents a fair and reasonable compromise of the disputed issues of fact and law and fully and finally resolves the Plaintiffs' FLSA overtime wage claims against Sepracor. Given that there has been no opt-in Plaintiffs in the multi-district litigation or the original Arizona case and that there is no known person currently expressing interest in becoming an opt-in Plaintiff, there was no "class" issues that needed to be addressed by the Arizona Plaintiffs and Sepracor in the settlement negotiations.

23.     The parties considered and negotiated numerous factors to arrive at the agreed-upon settlement amounts in recognition of each Plaintiff's claim for unpaid overtime wages along with Plaintiffs' claims for attorneys' fees and costs. The specific sums to be paid to the Arizona Plaintiffs and their attorneys are set forth below and in the parties' Settlement Agreement attached to the parties' Joint Motion of Arizona Plaintiffs Greeves, Clark and Waeschle and Defendant Sepracor, Inc. to Approve Settlement Agreement and Dismiss Lawsuit.

24.     The parties have agreed to settle this dispute after reaching a reasonable compromise of the issues and a fair and equitable resolution of this matter given the facts of this case and the complex and numerous legal issues involved.

25.     I believe that proceeding further through dispositive motions and possible trial presented a significant risk of achieving a smaller (or no) recovery for the Plaintiffs.  Given the evolving case law, there was a significant risk that the Plaintiffs could be considered exempt under the FLSA.

26.     I personally reviewed these settlement values with each of the settling Plaintiffs.  All Plaintiffs agree the settlement values were fair and appropriate and accepted all general terms of settlement.

27.     In reviewing the settlement with the Plaintiffs, I also discussed the proposed terms for payment of attorneys' fees and related costs.

28.     Defendant offered, after substantial negotiations, to pay a total of $150,000.

29.     The following is a summary of the number or hours, effective hourly rate and value of attorneys' fees involved in prosecuting this case:

|  | Hourly Rate | Hours | Value |
|---|---|---|---|
| Michael R. Pruitt (Lead Counsel) | $300.00 | 172.5 | $51,750.00 |
| Christine Crockett (Associate) | $185.00 | 165 | $30,525.00 |
| Gregory Fairbanks (Paralegal) | $120.00 | 385 | $46,200.00 |

30.     I am familiar with the rates charged by attorneys and paralegals in matters of this type in the Phoenix metropolitan area. Based on that knowledge, and given the number of Plaintiffs involved, the complexity of the case and the numerous legal and factual issues that were addressed, I believe that the billing rates used by Jackson White are fair and reasonable for the work performed and would be comparable to those

charged by other qualified employment law attorneys and paralegals in the Phoenix metro area.

31.    The proposed distribution to each of the Plaintiffs should be considered fair and equitable since it is related to the length of each Plaintiff's employment with Defendant and the potential overtime wage claim each brought to the lawsuit.

32.    The proposed settlement amounts include a somewhat smaller amount assigned to Plaintiff Waeschle in comparison to the other Plaintiffs. This is based on her shorter length of employment during the potential statute of limitations period and the possibility that Waeschle might qualify for the highly compensated exemption during a portion of her employment.

33.    Pursuant to the parties' settlement agreement, the three Arizona Plaintiffs have agreed to settle their claims as follows: 1) the sum of $5,000 is to be paid to Plaintiff Greeves to resolve her claim for unpaid overtime wages and an additional sum of $5,000 to resolve her claim for liquidated damages; 2) the sum of $5,000 is to be paid to Plaintiff Clark to resolve his claim for unpaid overtime wages and an additional sum of $5,000 to resolve his claim for liquidated damages; and 3) the sum of $2,500 is to be paid to Plaintiff Waeschle to resolve her claim for unpaid overtime wages and an additional sum of $2,500 to resolve her claim for liquidated damages.

34.    Pursuant to the parties' settlement agreement, Jackson White is to receive a total payment of $125,000 for attorneys' fees, costs and expenses. Of this sum, the amount of $112,100.69 is applied for attorneys' fees and the amount of $12,899.31 to reimburse Jackson White for its actual costs and expenses incurred in prosecuting this

action.  Jackson White's written fee agreement with each Plaintiff is consistent with the Parties' request.

35.     In this FLSA action, an award of fees and costs is mandatory.  29 U.S.C. § 216.  In determining the reasonableness of the request, the Court is guided by the 12-factor test announced in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).  *Haworth v. Nevada*, 56 F. 3d 1048, 1051 (9th Cir. 1995); Powell v. Carey Intern., Inc., 547 F.Supp. 2d 1281, 1286 (S.D. Fla. 2008)("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fees requests will exceed the amount of the judgment in the case") and Prater v. Commerce Equities Management Company, Inc., No. H-07-2349, 2008 WL 5L40045 (S.D.Tex.).

36.     Given the facts of this case, along with the complexity and numerous legal issues involved, the proposed settlement amount is fair to all of the parties involved and allows them to resolve this matter by mutual agreement and move forward.

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct and that the attorneys' fees and cost incurred in this action were reasonable and necessarily performed.

/ / /

**DATED** this 6th day of November, 2009.

**JACKSON WHITE**


 s/Michael R. Pruitt
By: Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona   85201
Attorneys for Plaintiffs

### Certificate of Service

I hereby certify that on the 6th day of November, 2009, I caused the foregoing document to be filed electronically with the Clerk of the court through ECF; and that ECF will send an e-notice of the electronic filing to the ECF participants.


Michael D. Moberly
Carolann Cervetti Bullock
John M. Fry
**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Attorneys for Defendant


William B. deMeza Jr. (admitted pro hac vice)
**HOLLAND & KNIGHT, LLP**
100 North Tampa St., Suite 400
Tampa, FL 33602-3644
Telephone: 813-227-8500
Attorneys for Defendant


By s/ Gregory Fairbanks